MONTEREY COAL COMPANY *et al.*, Plaintiffs-Appellees, *v.* BRAD EVILSIZER, Director of the Department of Mines & Minerals, Defendant-Appellant (Freeman United Coal Mining Co. *et al.*, Intervening Plaintiffs; Peabody Coal Co., Intervening Plaintiff-Appellee; United Mine Workers of America, District 12, Intervening Defendant).

Fourth District   No. 4—83—0656

Opinion filed May 7, 1984.

Alexandra de Saint Phalle, of Londrigan, Potter & Randle, P.C., of Springfield, for appellant.

Stuart Dobbs, of Denby, Dobbs, Meno & Bloomer, P.C., of Carlinville, for appellee Monterey Coal Co.

Richard R. Elledge, of Gould & Ratner, of Chicago, for appellee Peabody Coal Co.

Edmund J. Moriarity, of Chicago, for appellee Old Ben Coal Co.

PRESIDING JUSTICE MILLS delivered the opinion of the court:

A single issue.

Does section 6.04(A) of the Coal Mining Act require a preshift examination before company personnel may carry out a "fire watch"?

We hold that it does not.

### THE FACTS

In the summer of 1982, the United Mine Workers of America, Local Union No. 9878, petitioned the Mining Board of Illinois for an interpretation of section 6.04(A) of the Coal Mining Act (Ill. Rev. Stat. 1981, ch. 96½, par. 604(A)), which requires a preshift examination of a mine before a shift of workers enters the mine to work. Section 6.04(A) of the Coal Mining Act states in pertinent part:

"1. When the mine is to be operated he [the mine examiner] shall examine the prescribed working places of such mine within 4 hours before any workers in such shift *** enter the underground areas of the mine. Examine every active working place in the mine and make tests therein with a permissible flame safety lamp for accumulation of methane and oxygen deficiency in the air therein; examine seals and doors to determine whether they are functioning properly; inspect and test the roof, face and rib conditions in the working areas and on active roadways and travelways; inspect active roadways, travelways, approaches to abandoned workings and accessible falls in active sections for explosive gas and other hazards; and

inspect to determine whether the air in each split is traveling in its proper course and in normal volume.

2. On non-coal producing shifts he shall examine the mine in its entirety the same as for a coal producing shift, except where men are to work only in the shaft, slope or drift or on the immediate shaft bottom, then only that area immediately surrounding the bottom need be examined."

Local 9878 requested the Mining Board to rule whether a coal mine operator could send company personnel down into a vacant mine to perform a fire watch inspection without first having the mine preexamined in accordance with section 6.04(A).

A "fire watch" is an inspection carried out by company personnel when the mine is vacant—when no coal producing or non-coal-producing shift work, such as construction or maintenance work, is being performed. Fire watches are usually performed over long holiday weekends and during vacation periods. The fire watch personnel consists of company supervisory personnel—including foremen, mine managers, and assistant mine managers. All the personnel hold mine examiner certificates and most of them also hold mine manager certificates.

The fire watch personnel enter the mine and monitor the condition of the property, equipment, and materials underground. Their primary function is to locate and extinguish smouldering fires while the fires are small enough for one man to control. The fire watch personnel also visually check all belt drives, transformers, circuit breakers, battery chargers, and shaft bottoms. In addition, they check to make sure that all electrical circuits that should be energized are energized and that all electrical circuits that should not be energized are not energized.

The Mining Board declined to rule on Local 9878's petition for an interpretation of section 6.04(A) and instead referred the question to the Attorney General of Illinois. The Attorney General issued an opinion, finding that a fire watch may not be performed unless a section 6.04(A) preshift examination is carried out first.

Several coal mine operators (Monterey Coal Company, Old Ben Coal Company, Freeman United Coal Mining Company, Inland Steel Coal Company, Peabody Coal Company) appealed the Attorney General's decision to the circuit court of Sangamon County, asking the court to enjoin Brad Evilsizer, the Director of the Illinois Department of Mines and Minerals, from enforcing the Attorney General's opinion. District 12 of the United Mine Workers of America was granted leave to intervene.

The coal mine operators filed a motion for summary judgment. Evilsizer and District 12 replied. After a hearing was held, the circuit court entered an order finding that the Attorney General's opinion was an invalid and erroneous construction of section 6.04(a) and enjoined the enforcement of the opinion.

Evilsizer and District 12 each filed separate appeals. This opinion deals with Evilsizer's appeal.

## ANALYSIS

On appeal, Evilsizer argues that the plain language of 6.04(A) supports the Attorney General's opinion that 6.04(A) requires that a preshift examination must be performed before a fire watch may be carried out. Evilsizer also argues that requiring a preshift examination before a fire watch is carried out furthers the legislature's purpose for enacting the Coal Mining Act—the promotion of mine safety.

We disagree on both points and affirm the trial court's order.

## PLAIN LANGUAGE

The plain language of 6.04(A) requires a preshift examination before any *shift* of workers enters the mine to perform coal producing or non-coal-producing work. A fire watch is simply not a shift of workers.

Webster's Third New International Dictionary 2095 (1976) defines a "shift" as:

"A group of people who work or occupy themselves in turn with other groups ***; a change of one group of people *** for another in regular alternation; a scheduled period of work or duty."

A single worker entering an otherwise vacant mine on a random basis to perform a safety check does not fit within the above definition of a shift. *Ergo*, the plain language of 6.04(A) does not require a preshift examination before a fire watch is carried out.

## MINE SAFETY

This court noted in *Freeman Coal Mining Corp. v. Ruff* (1967), 85 Ill. App. 2d 145, 228 N.E.2d 279, that the legislative purpose behind the enactment of the Coal Mining Act was coal mine safety. Requiring a preshift examination before a fire watch would *not* further that purpose.

Fire watches are not required by law. The coal mine operators carry them out on a strictly voluntary basis. The operators apparently believe that the cost of the fire watches is outweighed by the protec-

tion they afford both the people and the property in the mine.

Adding the burden of the cost—in both time and money—of a preshift examination to the cost of a fire watch would undoubtedly reduce the operator's incentive to carry out fire watches. Consequently, fire watches would be performed less frequently. And the overall result would be a decrease, not an increase, in mine safety. *Ergo*, requiring a preshift examination would hinder—not further—the legislative purpose behind the enactment of the Coal Mining Act.

In conclusion, both the plain language of section 6.04(A) and the legislative purpose behind the Coal Mining Act support the trial court's order finding that a preshift examination is not required before a fire watch is carried out.

Accordingly, we affirm.

Affirmed.

TRAPP and WEBBER, JJ., concur.